**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: mroberts@bursor.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARLA MAREE and MOURAD GUERDAD, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>DEUTSCHE LUFTHANSA AG,<br><br>                    Defendant. | Case No. 8:20-cv-00885-SVW-MRW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES, AND INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 10, 2023<br>Time: 1:30 p.m.<br>Courtroom:  10A<br>Judge: Hon. Stephen V. Wilson |

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

**PLEASE TAKE NOTICE THAT** on July 10, 2023 at 1:30 p.m., or as soon

4 thereafter as the matter may be heard by the above-captioned Court, located at the

5 First Street Courthose, 350 West 1st Street, Courtroom 10A, 10th Floor, Los Angeles,

6 California 90012, in the courtroom of the Honorable Stephen V. Wilson, Plaintiffs

7 Karla Maree and Mourad Guerdad ("Plaintiffs"), by and through their undersigned

8 counsel of record, will move and hereby do move, pursuant to Fed. R. Civ. P. 23(h),

9 for entry of the [Proposed] Order for an Award of Attorneys' Fees, Costs and

10 Expenses, and Incentive Awards.  This motion is based on: (1) this notice of motion

11 and memorandum of points and authorities; (2) the Declaration of Yeremey O.

12 Krivoshey in Support of Motions for Final Approval of Class Action Settlement and

13 for an Award of Attorneys' Fees, Costs and Expenses and Incentive Awards; (3) the

14 papers and pleadings on file; and (4) the arguments of counsel at the hearing on the

15 motion.

16 Dated:  June 5, 2023

Respectfully submitted,

17

**BURSOR & FISHER, P.A.**

18

By: */s/ Yeremey O. Krivoshey*

19 Yeremey O. Krivoshey

20 L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)

21 1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

22 Telephone: (925) 300-4455
E-mail: ltfisher@bursor.com

23 ykrivoshey@bursor.com

24

**BURSOR & FISHER, P.A.**

25 Max S. Roberts(*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor

26 New York, NY 10019
Telephone: (646) 837-7150

27 Facsimile:  (212) 989-9163
Email: mroberts@bursor.com

28

*Class Counsel*

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES
CASE NO. 8:20-CV-00885-SVW-MRW

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ................................................ 5

SUMMARY OF THE PROPOSED SETTLEMENT ............................................. 5

ARGUMENT ......................................................................................................... 6

I.    CLASS COUNSEL'S FEE REQUEST IS REASONABLE
      UNDER THE PERCENTAGE OF THE BENEFIT METHOD ..................... 7

      A.    Class Counsel Achieved Extraordinary Results For The
            Class .................................................................................................. 9

      B.    Plaintiffs' Claims Carried Substantial Risk ......................................... 9

      C.    Class Counsel Provided Quality Work In A Complex Case ............... 12

      D.    Market Rates As Reflected By Awards In Similar Cases
            Support Class Counsel's Fee Request .............................................. 13

      E.    Class Counsel Handled This Case On A Contingent Fee
            Basis And Bore The Financial Burden .............................................. 13

II.   CLASS COUNSEL'S ATTORNEYS' FEES ARE
      REASONABLE UNDER A LODESTAR CROSS-CHECK ...................... 15

      A.    Class Counsel Spent A Reasonable Number Of Hours On
            This Litigation At A Reasonable Hourly Rate ................................... 16

      B.    All Relevant Factors Support Applying a Multiplier to Class
            Counsel's Lodestar ........................................................................... 17

      C.    Class Counsel's Projected Future Time Should Be Included
            In The Lodestar Cross-Check .......................................................... 19

III.  THE REQUESTED INCENTIVE AWARDS FOR PLAINTIFFS
      ARE REASONABLE ............................................................................... 20

IV.   THE REQUESTED COSTS ARE REASONABLE AND
      SHOULD BE APPROVED ...................................................................... 22

CONCLUSION .................................................................................................... 22

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aguilar v. Wawona Frozen Foods*,
  2017 WL 2214936 (E.D. Cal. May 19, 2017)..........................................................25

*Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*,
  2018 WL 746393 (E.D. Cal. Feb. 6, 2018) ..............................................................15

*Amador v. Baca*,
  2020 WL 5628938 (C.D. Cal. Aug. 11, 2020) ...........................................................5

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013).......................................................................18, 22

*Bond v. Ferguson Enterprises, Inc.*,
  2011 WL 2648879 (E.D. Cal. June 30, 2011) ..........................................................28

*Bravo v. Gale Triangle, Inc.*,
  2017 WL 708766 (C.D. Cal. Feb.16, 2017) .............................................................15

*Castellon v. Penn-Ridge Transportation, Inc.*,
  2020 WL 7786659 (C.D. Cal. Nov. 3, 2020) ...........................................................11

*Corzine v. Whirlpool Corp.*,
  2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) .........................................................26

*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
  2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) .........................................................19

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*,
  2020 WL 5625740 (C.D. Cal. Sep. 17, 2020) ..........................................................17

*Edwards v. National Milk Producers Federation*,
  2017 WL 3616638 (N.D. Cal. June 26, 2017) .........................................................13

*Elder v. Hilton Worldwide Holdings, Inc.*,
  2021 WL 4785936 (N.D. Cal. Feb. 4, 2021).............................................................24

*Farrell v. Bank of Am. Corp., N.A.*,
  827 F. App'x 628 (9th Cir. 2020).............................................................................22

*Fischel v. Equitable Life Assur. Soc'y*,
  307 F.3d 997 (9th Cir. 2002) ..................................................................9, 24

*Galavis v. Bank of Am., N.A.*,
  2020 WL 5898800 (C.D. Cal. July 14, 2020) ..........................................5

*Garcia v. Gordon Trucking, Inc.*,
  2012 WL 5364575 (E.D. Cal. OCt. 31, 2012) ..........................................28

*Gatlin v. United Parcel Serv., Inc.*,
  2020 WL 9813328 (C.D. Cal. July 31, 2020) .....................................27, 28

*Graham v. DaimlerChrysler Corp.*,
  34 Cal. 4th 553 (2004) ...........................................................................21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................9, 19, 22

*Harris v. Vector Mktg. Corp.*,
  2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ...............................................28

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. Jan. 20, 2011) ................................................23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................24

*Howard Fan v. Delta Air Lines, Inc.*,
  2020 WL 5044614 (C.D. Cal. May 20, 2020) .............................1, 4, 13, 28

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ..........................................................9

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ..........................................23

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018).................................14, 19, 23

*In re Equity Funding Corp. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977)........................................................18

*In re High-Tech Employee Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ............................................23

*In re HPL Techs., Inc. Sec. Litig.*,
    366 F. Supp. 2d 912 (N.D. Cal. 2005) .................................................................... 22

*In re Mego Financial Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................. 15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 18

*In re Snap Inc., Securities Lit.*,
    2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ............................................................. 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods.* Liab. Litig.,
    746 F. App'x 655 (9th Cir. 2018) ............................................................................ 25

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir.1994) .................................................................................. 20

*Kaupelis v. Harbor Freight ToolsUSA., Inc.*,
    2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) ......................................................... 24

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ............................................................................. 22, 24

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................................. 14

*Kumar v. Salov N. Am. Corp.*,
    2017 WL 2902898 (N.D. Cal. July 7, 2017) ........................................................... 13

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................................................. passim

*Maree v. Deutsche Lufthansa AG*,
    2020 WL 6018806 (C.D. Cal. Oct. 7, 2020) ............................................................ 16

*Maree v. Deutsche Lufthansa AG*,
    2021 WL 267853 (C.D. Cal. Jan. 26, 2021) ...................................................... 16, 17

*Maree v. Deutsche Lufthansa AG*,
    2023 WL 2563914 (C.D. Cal. Feb. 13, 2023) .................................................. passim

*McKeen-Chaplin v. Provident Savings Bank, FSB*,
    2018 WL 3474472 (E.D. Cal. July 19, 2018) .......................................................... 20

*Morales v. City of San Rafael*,
　96 F.3d 359 (9th Cir. 1996)................................................................24

*Nitsch v. DreamWorks Animation SKG Inc.*,
　2017 WL 2423161 (N.D. Cal. June 5, 2017) ......................................23

*Nozzi v. Hous. Auth. for the City of Los Angeles*,
　2018 WL 1659984 (C.D. Cal. Feb. 15, 2018) .....................................23

*Nur v. Tatitlek Support Servs., Inc.*,
　2016 WL 7626144 (C.D. Cal. Aug. 23, 2016) .......................................4

*Parkinson v. Hyundai Motor America*,
　796 F. Supp. 2d 1160 (C.D. Cal. 2010).............................................23

*Peel v. Brooksamerica Mortgage Corp.*,
　2015 WL 12745788 (C.D. Cal. Apr. 6, 2015).....................................21

*Perez v. Rash Curtis & Associates*,
　2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ....................... 11, 23, 25

*Retta v. Millennium Prods., Inc.*,
　2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ....................................19

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
　281 F. Supp. 3d 833 (N.D. Cal. 2017) ...............................................26

*Reyes v. Experian Information Solutions, Inc.*,
　856 F. App'x 108 (9th Cir. 2021).........................................................6

*Reyes v. Experian Information Solutions, Inc.*,
　2021 WL 9748881 (C.D. Cal. May 4, 2021) ........................................6

*Rodriguez v. W. Publ'g Corp.*,
　563 F.3d 948 (9th Cir. 2009).............................................................27

*Salmonson v. Bed Bath and Beyond, Inc.*,
　2013 WL 12171817 (C.D. Cal. Mar. 14, 2013) .................................2, 3

*Staton v. Boeing Co.*,
　327 F.3d 938 (9th Cir. 2003).............................................................12

*Steiner v. Am. Broad. Co.*,
　248 F. App'x 780 (9th Cir. 2007).......................................................25

*Turk v. Gale/Triangle, Inc.*,
   2017 WL 4181088 (E.D. Cal. Sept. 21, 2017) ........................................... 28

*Unutoa v. Interstate Hotels & Resorts, LLC*,
   2016 WL 7496127 (C.D. Cal. Aug. 23, 2016) ............................................ 6

*Vandervort v. Balboa Capital Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ......................................................... 19

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ........................................................ 13, 20

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................... 14, 22, 25

*Wallace v. Countrywide Home Loans, Inc.*,
   2015 WL 13284517 (C.D. Cal. Apr. 17, 2015) .......................................... 19

*Weeks v. Kellogg Co.*,
   2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ........................................... 12

*Williams v. MGM-Pathe Comms., Co.*,
   129 F.3d 1026 (9th Cir. 1997) .............................................................. 3, 11

*Wing v. Asarco Inc.*,
   114 F.3d 986 (9th Cir. 1997) .................................................................. 18

*Young v. Polo Retail, LLC*,
   2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................................ 11, 20

**RULES**

Fed. R. Civ. P. 23(h) ...................................................................................... 1, 9

**OTHER AUTHORITIES**

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS
   (3d ed. 1992) ......................................................................................... 25

FED. TRADE COMM'N, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND
   ANALYSIS OF SETTLEMENT CAMPAIGNS (2019) ........................................ 2

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Karla Maree and Mourad Guerdad ("Plaintiffs"), by and through their undersigned counsel, Bursor & Fisher, P.A. ("Class Counsel"), respectfully submit this memorandum of points and authorities in support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs and Expenses and Incentive Awards.

## INTRODUCTION

Class Counsel has run the gamut the get this case to a close after more than three years of incredibly contentious litigation. In the end, Class Counsel delivered a tremendous result, a Settlement with a claims-made fund of $3.5 million, plus the ability for Class Members to receive full refunds of unrefunded flights, subject to no cap. This Court has already conducted extensive examination of the potential damages at trial, finding that the amounts offered are reasonable. *See generally Maree v. Deutsche Lufthansa AG*, 2023 WL 2563914 (C.D. Cal. Feb. 13, 2023) (Order Granting Reconsideration of Preliminary Approval, ECF No. 198). Although "[e]valuating recovery in this case presents several challenges," the recovery here may very well be orders of magnitude higher than what Class Members could have achieved *at trial*. *See Maree*, 2023 WL 2563914, at *12 (party valuations for damages at trial as low as $159,730). For this recovery, Class Counsel seek attorneys' fees just *below* the Ninth Circuit's 25 percent benchmark, plus their reasonable costs and expenses: $856,498.61 in attorneys' fees, and $18,501.39 in costs and expenses. *See Howard Fan v. Delta Air Lines, Inc*., 2020 WL 5044614, at *4 (C.D. Cal. May 20, 2020) (Wilson, J.) ("The benchmark for attorney's fees in the Ninth Circuit is 25% of the common fund, and this is the most common fee award assessed in this district."). The requested fees amount to 24.47% of the $3.5 million fund, and an even smaller fraction of the overall benefits created by the Settlement.[1] And, to the extent that the

---

[1] The value of the Settlement was a hotly contested issue at preliminary approval. Plaintiffs argued the value of the Settlement was approximately $60 million (the $3.5 million in addition to the $56 million in full refunds). *Maree*, 2023 WL 2563914, at *11 (C.D. Cal. Feb. 13, 2023). Although agreeing "[t]he notice to class members and

Court opts to perform a lodestar cross-check, the requested fees amount to only a 1.66 multiplier, which is more than justified by the results obtained and the severe risks faced by Class Counsel. *See* Declaration of Yeremey O. Krivoshey ("Krivoshey Decl.") ¶¶ 14-21, 33.

As this Court has recognized, "the Ninth Circuit has held that the percentage of recovery method should be judged against the entire fund available rather than the percentage actually claimed." *Salmonson v. Bed Bath and Beyond, Inc*., 2013 WL 12171817, at *8 n.7 (C.D. Cal. Mar. 14, 2013) (Wilson, J.) (citing *Williams v. MGM-Pathe Comms., Co*., 129 F.3d 1026, 1027 (9th Cir. 1997)). Thus, it would be an abuse of discretion to base the fee here on the amount claimed, instead of the amount made available. *See id*.

To the extent that the amount claimed is relevant, it also supports Class Counsel's fee request. Though the Settlement is structured as a claims-made fund, its *realized* benefits are substantial. To date, 20,505 persons have submitted claims, which is approximately 12.42 percent of Settlement Class Members. This is a far higher claims rate than in typical consumer class action settlements. *See* FED. TRADE COMM'N, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS 11 (2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases weighted by the number of notice recipients) was 4%."). It is also far higher than the 4.32% claims rate in another, nearly identical COVID-19 flight refund settlement where final approval was granted. *See* Krivoshey Decl ¶¶ 52-58 (discussing claims rate in *Ide v. British Airways, PLC (UK)*, Case No. 1:20-cv-03542-JMF (S.D.N.Y)); *id.* Exs. 17-20.

refund value provides some value to the class," the Court ultimately valued the entire Settlement at $9.1 million. *Id*. Given that Plaintiffs, Lufthansa, and the Court seem to agree that the $3.5 million cap provides exactly that in value, Plaintiffs use this number as the value of the Settlement for the purposes of this Motion to be conservative. Of course, Plaintiffs continue to believe that the Settlement in fact provides far more than $3.5 million in benefits.

As explained in more detail in the concurrently filed Motion for Final Approval, Class Counsel expects that Lufthansa will have to pay out at least $3,194,260.59: the $500,000 Minimum Floor for the $10 Cash Option, $45 Voucher Option, and Interest Payment claims, $1,632,952.59 in full refund claims (excluding Interest Payments), $182,308 in Claims Administration Expenses, $875,000 in attorneys' fees and costs (assuming that they are granted in full), and $4,000 in incentive awards. *See* Declaration of Dana Boub Decl. ¶¶ 20; Krivoshey Decl. ¶ 23; *Maree*, 2023 WL 2563914, at *11 ("In considering the amount offered to the class, the Court must also consider attorney's fees, incentive awards, and administrative costs."). That is a tremendous benefit for the Class.

Plaintiffs' fee request also aligns with this Court's multitude of fee decisions in common fund class actions over the past decade, as illustrated in the below summaries:

- *Nur v. Tatitlek Support Servs., Inc.*, 2016 WL 7626144, at *3, *8 (C.D. Cal. Aug. 23, 2016) (Wilson, J.). This Court approved a $3 million claims-made settlement with a $675,931.13 reversion. Class Counsel had intended to seek up to $900,000 in fees (30%) at preliminary approval, but sought only $700,000 at final approval in an exchange for Defendants' waiver of their right to withdraw from the Settlement, which they could have. The Court approved $700,000 in fees, amounting to 23.3% of the Gross Settlement Amount ($3 million). Results of a lodestar cross-check were not included in the opinion.

- *Howard Fan v. Delta Air Lines, Inc.*, 2020 WL 5044614, at *1-5 (C.D. Cal. May 20, 2020) (Wilson, J.). This Court granted fees of 25% of the $3.5 million fund, amounting to $875,000 in fees and an additional $22,602.26 in costs. The lodestar multiplier was 1.78. The Court noted that "Plaintiffs do not provide a clear assessment of what fraction of total potential liability the settlement entails."

- *In re Snap Inc., Securities Lit.*, 2021 WL 667590, at *1-3 (C.D. Cal. Feb. 18, 2021) (Wilson, J.). This Court granted fees of 25% of the $154,567,500 common fund, or $38.6 million in fees. The Court did not conduct a lodestar cross-check, but noted that class

counsel "estimated" that they had expended 50,000 hours.  *See id.*, at *4 n.2.  That comes out to a blended rate of $772.83 per hour.  Notably, the Court stated that the total value of the settlement "represents approximately 7.8% of the class's maximum potential aggregate damages."  *Id.* at *1.

- *Amador v. Baca*, 2020 WL 5628938, at *12-13 (C.D. Cal. Aug. 11, 2020) (Wilson, J.).  This Court granted fees of 25% of the $53 million "megafund," totaling $13,250,000 in fees.  The fee awarded amounted to a 2.5x lodestar multiplier.

- *Galavis v. Bank of Am., N.A.,* 2020 WL 5898800, at *2-4 (C.D. Cal. July 14, 2020) (Wilson, J.).  This Court granted fees of 25% of the $770,000 constructive common fund.  The fee resulted in a lodestar multiplier of 0.91, though the Court noted that the Settlement provided for a "clear sailing" provision and authorized fees of nearly 70% of the direct benefit to class members.

- *Reyes v. Experian Information Solutions, Inc.,* 2021 WL 9748881, at *1 (C.D. Cal. May 4, 2021) (Wilson, J.).  This Court granted fees of 25% of the $24 million fund, after the Ninth Circuit reversed the Court's previous decision to grant only a 16.67% fee.  *See Reyes v. Experian Information Solutions, Inc.*, 856 F. App'x 108, 110 (9th Cir. 2021).

- *Unutoa v. Interstate Hotels & Resorts, LLC*, 2016 WL 7496127, at *4 (C.D. Cal. Aug. 23, 2016) (Wilson, J.).  This Court granted fees of 25% of the $1.435 million settlement, amounting to $358,750.   The Court noted that "Plaintiff placed into controversy at least $8,542,033," making the value of the settlement roughly 16.8 percent of potential damages at trial.  The Court also noted that the case "did not present any substantially novel or difficult questions of law," that "the level of discovery does not appear overly burdensome or unusual for this type of case," and that "this case did not involve any complex motion practice that would require special skill or expertise in this area of law."  *See id.*

Of course, none of these prior decisions are exact fits.  But they do illustrate that Class Counsel's fee is well supported by the Court's prior decisions in the area, in terms of type of settlement (claims-made), size of the settlement ($3.5 million, plus),

percentage of the award (less than the 25% benchmark routinely awarded by this Court), total dollar amount of the award, percentage of recovery (with the Court approving 25% fees in cases with 7.8% and 16.8% recoveries), and lodestar multiplier (with the Court previously awarding a multiplier of 2.5).  This Court has already found that the Settlement is reasonable in part because "[t]he fees provided to Maree's counsel align with the Ninth Circuit's 25% benchmark."  *Maree*, 2023 WL 2563914, at *8.  Given the results obtained, the risks faced, and the fact that Class Counsel seeks less than the Ninth Circuit's benchmark, the Court should approve Class Counsel's motion for fees in full.

Finally, Plaintiffs request that the Court award them incentive awards in the amount of $2,000 each ($4,000 total) to account for the significant time and effort they invested in this case on behalf of the Class.

## BACKGROUND AND PROCEDURAL HISTORY

The Declaration of Yeremey O. Krivoshey, submitted herewith, contains a discussion of the background and procedural history of this case, including (i) Plaintiffs' pre-suit investigation, (ii) the pleadings and motions, (iii) the parties' arms-length settlement negotiations, and (v) preliminary approval and dissemination of notice.  Plaintiffs also assume that the Court is very familiar with the background and procedural posture of this litigation given its lengthy history.

## SUMMARY OF THE PROPOSED SETTLEMENT

The Settlement provides at least $3.5 million in value to all Settlement Class Members.  *Maree*, 2023 WL 2563914, at *11.  Specifically, for Settlement Class Members who have received refunds from Lufthansa, these Settlement Class Members shall have the option to claim either $10 in cash or a $45 Voucher for future travel.  Settlement ¶ III.A.  This number is capped at $3.5 million.  *Id.* ¶ III.C.  The Court valued this portion of the Settlement at $3.5 million, inclusive of attorneys' fees and costs, Claims Administration Costs, and incentive awards.  *Maree*, 2023 WL 2563914, at *11, *11 n.2.  Further, the Parties agreed to modify the Settlement by

adding a $500,000 floor for all Cash Option, Voucher Option, and Interest Payments, which shall be "paid on a pro rata basis to those Settlement Class Members who have submitted claims."  ECF No. 203 ¶ 26.

For Settlement Class Members who have not received a refund from Lufthansa, these Settlement Class Members shall have the ability to claim a full refund for any cancelled flight, as well as 1% of their ticket price (*i.e.*, a 101% refund).  Settlement ¶ III.B.2.  While the Interest Payments are subject to the Settlement Cap, the full refunds are not.  *Id.* ¶ III.C.  Class Counsel estimates the average payment to these Settlement Class Members to be at least $1,834.57.  Krivoshey Decl. ¶ 15.

## **ARGUMENT**

Fed. R. Civ. P. 23(h) provides that a district court may "award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Under Ninth Circuit standards, a district court may award attorneys' fees under either the "percentage-of-the-benefit" method or the "lodestar" method where a common fund has been created.  *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  However, "the percentage of the fund is the typical method of calculating class fund fees."  *Lopez v. Youngblood*, 2011 WL 10483569, at *11 (E.D. Cal. Sept. 2, 2011).  Fee awards must consider the interest in "encourage[ing] plaintiffs' attorneys to move for early settlement, provid[ing] predictability for the attorneys and the class members, and reduc[ing] the time consumed by counsel and court in dealing with voluminous fee petitions."  *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

The Settlement requires Defendant to pay Class Counsel's attorneys' fees, costs, and expenses awarded by the Court "not to exceed 25% of $3.5 million [*i.e.*, $875,000]."  Settlement ¶ IX.A.  Class Counsel here has requested an award of $856,498.61 in attorneys' fees, and $18,501.39 in costs and expenses, which totals $875,000.  The attorneys' fee in isolation amounts to 24.47% of $3.5 million, which is

less than the Ninth Circuit's 25% benchmark.  *See Maree*, 2023 WL 2563914, at *8. And it equals a 1.66 multiplier on Class Counsel's lodestar.  Krivoshey Decl. ¶ 33.  As set forth below, under either the percentage of the benefit method (which the Court should apply) or the lodestar method, Class Counsel's fee request is reasonable and should be approved accordingly.

## I.     CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER THE PERCENTAGE OF THE BENEFIT METHOD

"Where there is a claims-made settlement, such as here, the percentage of the fund approach in the Ninth Circuit is based on the total money available to class members, plus costs (including class administrative costs) and fees."  *Lopez*, 2011 WL 10483569, at *12.  "It is well established that, in claims made or class reversion cases where there is a maximum fund, and unclaimed funds revert to the defendant, it is appropriate to award class fund attorneys' fees based on the gross settlement fund [*i.e.*, the total benefits made available rather than the amount actually paid out]."  *Id.*; *see also Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("The Ninth Circuit, however, bars consideration of the class's actual recovery in assessing the fee award"); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."); *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *6 (N.D. Cal. Apr. 17, 2020) ("[I]n the Ninth Circuit, it is an abuse of discretion to base attorney's fees on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.") (internal quotations omitted *Castellon v. Penn-Ridge Transportation, Inc.*, 2020 WL 7786659, at *11 (C.D. Cal. Nov. 3, 2020) (collecting cases and noting "Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed").

1    Further, as this Court recognized, "[i]n considering the amount offered to the

2    class, the Court must also consider attorney's fees, incentive awards, and

3    administrative costs." *Maree*, 2023 WL 2563914, at *11; *see also Lopez*, 2011 WL

4    10483569, at *12 ("Fees and class administration costs are included in determining

5    the size of the fund.") (citing *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003));

6    *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *29 (C.D. Cal. Nov. 23, 2013) (finding

7    notice and clams administration costs "conferred a concrete benefit on the class" and

8    were thus "proper to include [] in the value of the class action settlement"); *Kumar v.*

9    *Salov N. Am. Corp.*, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), *aff'd*, 737 F.

10   App'x 341 (9th Cir. 2018) ("The Court analyzes an attorneys' fee request based on

11   either the 'lodestar' method or a percentage of the total benefit made available to the

12   settlement class, *including costs, fees*, and injunctive relief.") (emphasis added).

13   "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to

14   33 1/3% of the total settlement value, with 25% considered the benchmark." *Edwards*

15   *v. National Milk Producers Federation*, 2017 WL 3616638, at *8 (N.D. Cal. June 26,

16   2017). In this District, as this Court has recognized, the 25% benchmark "is the most

17   common fee award assessed." *Howard Fan*, 2020 WL 5044614, at *4. The exact

18   percentage varies depending on the facts of the case, and in "most common fund

19   cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266

20   F.R.D. 482, 491 (E.D. Cal. 2010) (quoting *Knight v. Red Door Salons, Inc.,* 2009 WL

21   248367, at *6 (N.D. Cal. Feb. 2, 2009)).

22   The Ninth Circuit has identified a number of factors that may be relevant in

23   determining if a fee award is reasonable: (i) the results achieved; (ii) the risk of

24   litigation; (iii) the skill required and the quality of work; (iv) market rates as reflected

25   by awards made in similar cases; and (v) the contingent nature of the fee and the

26   financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

27   1048-50 (9th Cir. 2002). Here, each of these factors supports Class Counsel's fee

28

request because Class Counsel's outstanding work secured remarkable results for the Settlement Class in the face of substantial risks to any recovery.

### A. Class Counsel Achieved Extraordinary Results For The Class

[T]he overall result and benefit to the Class … has been called the most critical factor in granting a fee award." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *9 (N.D. Cal. Aug. 17, 2018) (internal quotations omitted).  Here, Class Counsel has secured at least $3.5 million in monetary value for the Settlement Class. *Maree*, 2023 WL 2563914, at *11.  This represents between 18% and 2,192% of the Settlement Class's potential recovery at trial (Krivoshey Decl. ¶ 18), a more than reasonable if not extraordinary recovery for the Settlement Class considering the risks that Class Members would face had this case continued through class certification, summary judgment, and trial.  *See Maree*, 2023 WL 2563914, at *12 ("Courts have routinely approved settlements that amount to fractions of maximum recovery."); *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement that was 16.67% of the potential recovery); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); *Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*, 2018 WL 746393, at *10 (E.D. Cal. Feb. 6, 2018) (approving settlement that was 1% of the potential recovery).

Class Counsel's fee request of $856,498.61 —or just 24.47% of the $3.5 million minimum value of the Settlement—is therefore reasonable considering the relief provided to the Settlement Class.

### B. Plaintiffs' Claims Carried Substantial Risk

This factor looks to the risk and novelty of the claims at issue.  Both are certainly present here.  *See* Krivoshey Decl. ¶¶ 19-21 (discussing the risks of litigating Plaintiffs' claims).

As to the risk, Plaintiffs' claims faced significant uncertainty from the get-go. At the outset of this case, Judge Fitzgerald dismissed all claims for a full refund. *Maree v. Deutsche Lufthansa AG*, 2020 WL 6018806, at *4-5 (C.D. Cal. Oct. 7, 2020). Thus, Plaintiffs were left with only claims related to interest and consequential damages stemming from Lufthansa's "unreasonable" delay in issuing refunds. *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *6 (C.D. Cal. Jan. 26, 2021). And, as this Court noted, "[w]hile limited discovery provided evidence demonstrating that Lufthansa may have taken steps to delay refunds, the limited discovery also demonstrated that … the average times for refunds were between 40 and 140 days." *Maree*, 2023 WL 2563914, at *9. "[G]iven the backdrop of COVID-19 and the prospect of Lufthansa going bankrupt, there is a serious question as to whether an average refund period of 40, 45, or even 140 days was a[n] [un]reasonable time provide refunds." *Id.*, at *10. This is on top of the serious risks Plaintiffs would face at class certification, which the Court acknowledged:

> Maree and Lufthansa point to three issues that may undermine the ability for the purported Class to satisfy the predominance inquiry. First, the determination of what a reasonable time to issue is a highly individualized factual determination. Second, the determination of whether which class members were injured would be an individualized determination because Lufthansa does not automatically keep track of when a customer requested or received a refund. Finally, the existence of condition precedents may raise individual determinations as to whether each class member provided sufficient proof to be entitled to a refund.

*Id*.

As to novelty, this lawsuit was among the initial wave of lawsuits against airlines seeking refunds for cancelled flights due to the COVID-19 pandemic. While these lawsuits in theory rested on archaic principles of contract law, their application to the unprecedented circumstances of the COVID-19 pandemic was entirely novel. That application saw minimal success. Many of these lawsuits did not make it off the tarmac. *See*, *e.g.*, *Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, 2020 WL 5625740, at *6 (C.D. Cal. Sep. 17, 2020) (MTD granted). Only a few survived the

pleadings, but as here, were trimmed to focus on interest damages stemming from the delay in issuing refunds.  *Maree*, 2021 WL 267853, at *6 (C.D. Cal. Jan 26, 2021). And, three years after the onset of the COVID-19 pandemic, only three lawsuits have actually resulted in a class settlement that has been granted preliminary or final approval: this lawsuit, another lawsuit brought by Class Counsel against Turkish Airlines, and a third against British Airways.  *Ide v. British Airways PLC*, Case No. 1:20-cv-3542, ECF No. 131 (S.D.N.Y. Nov. 18, 2022); *Sholopa v. Turk Hava Yollari A.O (d/b/a Turkish Airlines)*, Case No. 1:20-cv-3294, ECF No. 86 (S.D.N.Y. Apr. 4, 2023).  By contrast, to Class Counsel's knowledge, after more than three years of litigation, *not one* COVID-19 related flight refund case has resulted in a court granting a contested class certification motion.  Krivoshey Decl. ¶ 20.

Further, Lufthansa is represented by highly skilled and well-paid lawyers from DLA Piper LLP.  These lawyers vigorously represented their client, challenged Plaintiffs' claims, and sought to obtain a defense verdict and deprive the Settlement Class of any recovery.  Krivoshey Decl. ¶ 20; *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."); *see also Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (affirming fee award and noting that the court's evaluation of class counsel's work considered "the quality of opposition counsel and [defendant's] record of success in this type of litigation"); *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.").

In sum, given the serious risks Plaintiffs would have faced at class certification and beyond, the novelty of the claims pursued here, the minimal success similar lawsuits have seen, and the sophisticated opposing counsel representing Lufthansa, Class Counsel's fee request is more than justified.

## C. Class Counsel Provided Quality Work In A Complex Case

The prosecution of a complex, nationwide class action like this one "requires unique … skills and abilities."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citation and quotation marks omitted).  Class Counsel more than delivered.  Through more than three years of litigation, Class Counsel (1) conducted extensive pre-suit investigation into Lufthansa's refund practices (or lack thereof) during the COVID-19 pandemic; (2) drafted the initial Complaint, First Amended Complaint, Second Amended Complaint, and Third Amended Complaint; (3) litigated two motions to dismiss and a motion to compel arbitration; (4) reviewed extensive discovery produced both prior to and after Plaintiffs executed the Settlement; (5) attended a full-day mediation with the Honorable Wayne Andersen (Ret.) of JAMS; (6) negotiated this Settlement; (7) successfully moved for reconsideration after preliminary approval was denied; (8) managed the dissemination of notice and the claims process; and (9) negotiated amendments to the Settlement— including the reminder notice and the $500,000 floor—that provided additional benefits to the Settlement Class.  Krivoshey Decl. ¶¶ 2-13.

The work performed by Class Counsel in this case represents the highest caliber of legal work and strongly supports their requested fee award.  *Id.*; *see also Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *9 (award of attorneys' fees supported where "[c]lass counsel developed the factual and legal claims of the case, sought extensive written and deposition discovery, reviewed thousands of pages of documents, retained experts to analyze the merits of Plaintiffs' claims and the potential damages recoverable in this action, engaged in extensive motion practice, and negotiated and drafted the Settlement Agreement"); *see also In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *13 (approving attorneys' fees where class counsel "performed significant factual investigation prior to bringing these actions; engaged in motion practice, including opposing two motions to dismiss …; engaged in written discovery; and participated in protracted negotiations with Anthem").

**D.     Market Rates As Reflected By Awards In Similar Cases
Support Class Counsel's Fee Request**

Class Counsel's 24.47% fee request is just below the 25% benchmark set by the

Ninth Circuit.  *Hanlon*, 150 F.3d at 1029.  Such a request easily compares favorably to

other fee requests in California.  *See, e.g.*, *Dakota Med., Inc. v. RehabCare Grp., Inc*.,

2017 WL 4180497, at *7-8, 14 (E.D. Cal. Sept. 21, 2017) (awarding 33.33% in

attorney's fees); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D.

Cal. 2014) (awarding 33.33% as attorney's fees); *Retta v. Millennium Prods., Inc.*,

2017 WL 5479637, at *19 (C.D. Cal. Aug. 22, 2017) (awarding 25% in attorneys'

fees in claims made settlement); *Young v. Polo Retail, LLC*, 2007 WL 951821, at *10

(N.D. Cal. Mar. 28, 2007) (awarding ~$438,000 in attorneys' fees in claims made

settlement valued at $1.4 million); *Lopez v. Youngblood*, 2011 WL 10483569, at *15

(E.D. Cal. Sept. 2, 2011) (awarding 28.5% in attorneys' fees in claims made

settlement); *Maree*, 2023 WL 2563914, at *8 ("The fees provided to Maree's counsel

align with the Ninth Circuit['s] 25% benchmark."); *see also* Introduction, *supra*

(citing cases where this Court awarded 25% in attorneys' fees).

**E.     Class Counsel Handled This Case On A Contingent Fee
Basis And Bore The Financial Burden**

To date, Class Counsel has worked for three years with no payment, and no

guarantee of payment absent a successful outcome.  That in itself presented

considerable risk.  *See Vasquez*, 266 F.R.D. at 492.  Courts have long recognized that

attorneys' contingent risk is an important factor in determining the fee award and may

justify awarding a premium over an attorneys' normal hourly rates.  *See In re Wash.

Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir.1994).  The

contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that

any recovery would be obtained, are significant.  *Id*. at 1300.  In *Wash. Pub. Power*,

the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward
> attorneys for taking the risk of non-payment by paying them a premium
> over their normal hourly rates for winning contingency cases ... [I]f this

'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted); *see also McKeen-Chaplin v. Provident Savings Bank, FSB*, 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018) ("Counsel has not received payment for the vast majority of its time spent on this case over the last five and a half years, and took on significant financial risk by taking on this action on a contingency fee basis.").

"Courts have also recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing for their work." *Peel v. Brooksamerica Mortgage Corp.*, 2015 WL 12745788, at *6 (C.D. Cal. Apr. 6, 2015) *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted).

Throughout this case, Class Counsel expended substantial time and money to prosecute a class action suit with no guarantee of compensation or reimbursement in the hope of prevailing against a sophisticated defendant represented by high-caliber attorneys from a prominent national law firm. *See* Krivoshey Decl. ¶¶ 2-13, 20. Class Counsel did not just invest almost 900 hours of their time in this case; they also invested $18,501.39 of their own money to prosecute this action for three years. *Id.* ¶¶ 31-32, 39-40; *see also id.* Exs. 2-3. If the case had been lost, Class Counsel would never have recouped that time and money. *Id.* ¶¶ 46-47. Further, if the case had advanced through class certification, Class Counsel's expenses would have increased many-fold, and Class Counsel would have been required to advance these expenses potentially for several years to litigate this action through judgment and appeals. *Id* ¶ 47. The Court should also note that Class Counsel had no co-counsel in this case,

and instead bore all of the financial risk to prosecute this case. *Id.* ¶ 46. This fact also supports a finding that Class Counsel's requested fee is fair and reasonable.

*      *      *

Weighing each of the aforementioned factors, Class Counsel's fee request of $856,498.61 —or 24.47% of the minimum value of the Settlement—is reasonable under the "percentage-of-the-benefit" method.

## II.   CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE UNDER A LODESTAR CROSS-CHECK

As an initial matter, there is no need to perform a lodestar cross-check because the Ninth Circuit "has consistently refused to adopt a crosscheck requirement." *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (holding the district court did not "abuse its discretion in using the percentage-of-recovery method to calculate fees and refusing to conduct a lodestar crosscheck"). To the extent the Court desires to, however, Class Counsel's fee request is more than supportable.

Courts in the Ninth Circuit often examine the lodestar calculation as a cross-check on the percentage fee award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at 1050. The cross-check analysis is a two-step process. *First*, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys.[2] *See Barbosa*, 297 F.R.D. at 451. *Second*, the court cross-checks the proposed percentage fee against the lodestar. *Id.* "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the *ex ante* risk of

---

[2] Where a court is calculating a fee award based solely on counsel's lodestar, the lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (identifying twelve factors courts may consider in analyzing the reasonableness of an attorneys' fee request).

---

nonrecovery in the litigation)." *Id.* (citing *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005). Here, the lodestar cross-check confirms the reasonableness of Class Counsel's requested fee.

### A.   Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate

Class Counsel worked efficiently. Class Counsel have submitted their detailed daily billing records showing what work was done and by whom as exhibits to their declaration. Those records confirm Class Counsel efficient billing. *See* Krivoshey Decl. Ex. 2. As of June 5, 2023, after three years of litigation, Class Counsel has worked 884 hours on this case for a total lodestar fee, at current billing rates, of $515,477.50. Krivoshey Decl. ¶ 32; *see also id.* Ex. 2. Class Counsel's blended hourly rate of $583.12 is quite reasonable. *See id.* ¶¶ 41-45. And the hourly rates for each of the lawyers and staff who worked on this case, which are set forth in the Krivoshey Declaration and exhibits thereto, are also reasonable and amply supported by the evidentiary material submitted with the Krivoshey Declaration. *See id.*; *see also id.* at Exs. 4-14.

Rates are "reasonable where they [are] similar to those charged in the community and approved by other courts." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011). California courts have repeatedly held rates commensurate with Class Counsel's rates to be fair and reasonable. *See*, *e.g.*, *Nozzi v. Hous. Auth. for the City of Los Angeles*, 2018 WL 1659984, at *7 (C.D. Cal. Feb. 15, 2018) (at 2017 rates, rates of $1,150, $750 and $765 for senior attorneys in private law firm approved); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *17 (approving billing rates for partners between $400 and $970, and associates between $185 to $850 "with most under $500"); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rates for senior attorneys of between $870 to $1200 per hour to be reasonable); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (approving "a billing rate ranging

from $750 to $985 per hour for partners, $500 to $800 per hour for 'of counsels'/senior counsel, and $300 to $725 per hour for other attorneys"); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving billing rates of $490 to $975 for partners, $310 to $800 for non-partner attorneys, and $190 to $430 for paralegals, law clerks, and litigation support staff); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675 for class counsel in a consumer class action).

Indeed, courts within California have routinely found the rates of Class Counsel fair and reasonable. *See, e.g.*, *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (finding Bursor & Fisher's hourly rates and blended hourly rate of $634.48 to be reasonable, and awarding a multiplier between 13.4 to 18.15); *Kaupelis v. Harbor Freight ToolsUSA., Inc*., 2022 WL 2288895, at *9 (C.D. Cal. Jan. 12, 2022) (finding Bursor & Fisher's "rate range from $700-$1000 for partners, $315-$450 for associates, and $350-$300 for paralegals … are reasonable compared to other awards in California courts"); *Elder v. Hilton Worldwide Holdings, Inc*., 2021 WL 4785936, at *9 (N.D. Cal. Feb. 4, 2021) (finding Bursor & Fisher's rates reasonable, including a blended hourly rate of $673); *see also Goodrich v. Alterra Mountain Co*., 1:20-cv-01057-RM-SKC, ECD No. 158, at 11 (D. Colo. Jan. 27, 2023) (approving Bursor & Fisher's roughly $654 blended hourly rate, and awarding a multiplier of 3.6.  In performing its cross-check analysis, the Court should therefore find Class Counsel's hours and rates reasonable.

**B.    All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar**

The lodestar analysis is not limited to the initial mathematical calculation of Class Counsel's base fee. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).  Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours

reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases.  *Fischel*, 307 F.3d at 1007, n.7; *see also Kerr*, 526 F.2d at 70.  Class Counsel discussed most of these factors above and all weigh heavily in favor of a multiplier and the requested fee award in this action.  *See* Argument §§ I.A-I.E, *supra*.

A fee award of $856,498.61 would represent a multiplier of 1.66 over the base lodestar fee of $515,477.50.  *Id.* ¶¶ 32-33.  In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3.  *See Vizcaino*, 290 F.3d at 1051 n.6 (finding no abuse of discretion in awarding a multiplier of 3.65); *see also Steiner v. Am. Broad. Co.,* 248 F. App'x 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *6 (E.D. Cal. May 19, 2017) (noting that "courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher"); ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).  Thus, even if the Court somehow finds the hours spent by Class Counsel or their hourly rates excessive, the 24% fee award would be justified by a multiplier within the normal 1 to 4 range approved by the Ninth Circuit.  The Court should find that the lodestar cross-check strongly supports the requested fee award.

**C.    Class Counsel's Projected Future Time Should Be Included
In The Lodestar Cross-Check**

Class Counsel's current time does not end the lodestar cross-check inquiry.  On

the contrary, the Court should include the at least 248.2 additional hours Class

Counsel will likely spend on this litigation going forward.

Courts routinely include the time class counsel projects to spend on a matter in

the lodestar cross-check.  *See*, *e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales*

*Practices, and Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) ("The

district court did not err in including projected time in its lodestar cross-check; the

court reasonably concluded that class counsel would, among other things, defend

against appeals and assist in implementing the settlement"); *Perez*, 2020 WL

1904533, at *20 (including future time in lodestar analysis because "[t]he Court

recognizes that class counsel will indeed incur continued fees in both the appeal of

this case and the subsequent litigation"); *Reyes v. Bakery & Confectionery Union &*

*Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017) (including, over

the defendants' objection, "125 anticipated future hours" to be spent on

"communicating with the settlement administrator and responding to inquiries from

class members" in the lodestar calculation);  *Corzine v. Whirlpool Corp.*, 2019 WL

7372275, at *11 (N.D. Cal. Dec. 31, 2019) (including "an estimate of 250 hours for

future work to complete Settlement's claims process through 2026" in

the lodestar calculation).

Here, Class Counsel anticipates spending additional time on this matter

handling issues that may arise with the notice campaign, answering class member

questions, and appearing at the final approval hearing.  Krivoshey Decl. ¶ 34.

Principally, however, Class Counsel expects they will spend additional time on this

matter because they anticipate counsel for the *Castanares* Plaintiffs will lodge an

objection to the Settlement.  *Id* ¶ 35.  Obviously, Class Counsel does not believe any

such objection would have merit.  *Id*.  Nonetheless, Class Counsel will need to spend

1  additional time responding to the objection and likely defending the Settlement on

2  appeal (should the objection be overruled and counsel for the *Castanares* Plaintiffs

3  file an appeal to the Ninth Circuit).  *Id.*

4      To get a better understanding of the time Class Counsel would spend defending

5  the Settlement on appeal, the two attorneys primarily involved in this action—Mr.

6  Krivoshey and Mr. Roberts—reviewed Class Counsel's billing records from three

7  appeals in the Ninth Circuit that either Mr. Krivoshey or Mr. Roberts handled.  *Id.*

8  ¶ 36.  After review of these billing records, Mr. Krivoshey and Mr. Roberts found that

9  Class Counsel spent an average of 248.2 hours handling an appeal before the Ninth

10  Circuit, from the filing of the notice of the appeal until the Ninth Circuit's order.  *Id.*

11  ¶¶ 36-37.  And, notably, each of these three appeals involved a pure question of law,

12  whereas an appeal in this case will likely take more time because it involves a replete

13  factual record.  *Id.* ¶ 38.  Thus, Class Counsel conservatively estimates they will spend

14  at least an additional 248.2 hours following final approval, and primarily defending

15  the Settlement on appeal from objections by counsel for the *Castanares* Plaintiffs.

16      Including Class Counsel's at least 248.2 projected hours in the lodestar cross-

17  check, at Class Counsel's blended hourly rate of $583.12, Class Counsel's lodestar

18  will increase to $660,207.88 and the lodestar multiplier will be reduced to 1.30.  *Id.*

19  ¶ 37.  This further supports the reasonableness of Class Counsel's fee request.

20  ## III.   THE REQUESTED INCENTIVE AWARDS FOR PLAINTIFFS ARE REASONABLE

21      In recognition of their efforts on behalf of the Class, and subject to the approval

22  of the Court, Plaintiffs seek an incentive award of $2,000 each ($4,000 total) as

23  appropriate compensation for their time and effort serving as the Class

24  Representatives in this litigation.

25      "Incentive awards are fairly typical in class action cases."  *Gatlin v. United*

26  *Parcel Serv., Inc.*, 2020 WL 9813328, at *6 (C.D. Cal. July 31, 2020) (Wilson, J.)

27  (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)).  Such

28

---

awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.  In determining whether a service award is appropriate, courts consider the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Gatlin*, 2020 WL 9813328, at *6 (cleaned up).

Here, the requested service awards of $2,000 each amount to 0.02% of the total value of the Settlement.  *Gatlin*, 2020 WL 9813328, at *6 (granting service awards where "each amount[ed] to only 0.01% of the gross settlement amount"). Further, as attested to in the Maree and Guerdad Declarations, both Plaintiffs assisted with Class Counsel's investigation and worked to prepare the pleadings in this matter, kept in regular contact with Class Counsel, reviewed and gave their prior approval to the Settlement, and would have been prepared to sit for a deposition.  *See* Krivoshey Decl., Ex. 15 at ¶¶ 2-6 (Maree Declaration); *Id*., Ex. 16 at ¶¶ 2-5 (Guerdad Declaration).  Both Plaintiffs have also kept in regular contact with Class Counsel during the pendency of preliminary approval and since the motion for reconsideration was granted.  Krivoshey Decl. ¶ 51.  The requested amount of $2,000 for each Plaintiff reflects their significant involvement and dedication to the case, which was crucial to Class Counsel's ultimate success.  *Id*.

Based on the foregoing, the payment of incentive awards to Plaintiffs is appropriate, and the amount of $2,000 each is reasonable when compared to other service awards. *See*, *e.g.*, *Gatlin*, 2020 WL 9813328, at *6 (approving $7,500 incentive awards to plaintiffs); *Turk v. Gale/Triangle, Inc.*, 2017 WL 4181088, at *5 (E.D. Cal. Sept. 21, 2017) (approving $10,000 incentive award to plaintiff who "has been involved in every step of the litigation, has been cooperative and helpful in gathering facts"); *Garcia*, 2012 WL 5364575, at *11 (approving $15,000 incentive awards to four plaintiffs); *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, at

*15 (E.D. Cal. June 30, 2011) (approving service awards of $11,250); *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *8 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 service award).

## IV.   THE REQUESTED COSTS ARE REASONABLE AND SHOULD BE APPROVED

"An attorney is entitled to recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Howard Fan*, 2020 WL 5044614, at *5 (cleaned up). Here, Class Counsel spent $18,501.39 in costs prosecuting this case. Krivoshey Decl. ¶ 40; *see also id.* Ex. 3 (itemized list of Class Counsel's costs and expenses). These expenses consist primarily of mediation fees and travel expenses for hearings, as well as other reasonably necessary expenses such as filing fees, e-discovery costs, transcript costs, and so forth. *Id.* Ex. 3. Because these expenses were reasonably necessary and not excessive, they should be allowed in full. *See* Krivoshey Decl. ¶¶ 39-40.

## <u>CONCLUSION</u>

After three years of litigation, Class Counsel secured an exceptional a settlement that provides significant relief to approximately 166,000 class members. This Settlement is the culmination of the determined and skilled work of Class Counsel. As a result, Plaintiffs and Class Counsel respectfully request that this Court award the following:

- $856,498.61 in attorneys' fees;
- $18,501.39 in costs and expenses; and
- $2,000 incentive awards to each Plaintiff ($4,000 total)

The requests are reasonable and appropriate in light of the tremendous results achieved in this case.

1   Dated:  June 5, 2023                    Respectfully submitted,

2                                           **BURSOR & FISHER, P.A.**

3                                           By: */s/ Yeremey O. Krivoshey*
4                                                  Yeremey O. Krivoshey

5                                           L. Timothy Fisher (State Bar No. 191626)
                                            Yeremey O. Krivoshey (State Bar No. 295032)
6                                           1990 North California Blvd., Suite 940
                                            Walnut Creek, CA 94596
7                                           Telephone: (925) 300-4455
                                            E-mail: ltfisher@bursor.com
8                                                     ykrivoshey@bursor.com

9
                                            **BURSOR & FISHER, P.A.**
10                                          Max S. Roberts (*Pro Hac Vice*)
                                            1330 Avenue of the Americas, 32nd Floor
11                                          New York, NY 10019
                                            Telephone: (646) 837-7150
12                                          Facsimile:  (212) 989-9163
                                            Email: mroberts@bursor.com
13

14                                          *Class Counsel*

15

16

17

18

19

20

21

22

23

24

25

26

27

28